**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIANNE HEIGL, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>WASTE MANAGEMENT OF NEW YORK, LLC,<br><br>　　　　　　　　　　Defendant. | Civil Action No. 1:19-cv-05487-WFK-ST |

**DECLARATION OF PHILIP L. FRAIETTA IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

　　　　1.　　　　I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

　　　　2.　　　　I make this declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement filed herewith.

　　　　3.　　　　Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

*The Litigation And Settlement History*

　　　　4.　　　　On August 30, 2019, Plaintiff, through counsel, sent a letter to Defendant alleging that it violated New York General Business Law ("GBL") § 399-zzz by charging her a $6.50 Administrative Charge in order for her to receive a paper billing statement and/or pay by United

States mail.

5. On September 17, 2019, Defendant responded to Plaintiff's letter by denying that it violated GBL § 399-zzz, but agreeing to suspend collection of the Administrative Charge from Ms. Heigl and similarly situated residential customers in New York pending further review.

6. On September 27, 2019, Plaintiff filed her class action lawsuit in the United States District Court for the Eastern District of New York alleging that Defendant's Administrative Charge was in violation of GBL § 399-zzz. (ECF No. 1).

7. On December 4, 2019, Defendant filed an Answer to Plaintiff's Complaint denying the allegations generally and asserting 18 affirmative defenses. (ECF No. 14).

8. Thereafter, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 and the Parties engaged in substantial written and document discovery on the merits of the case, which included the production and review of hundreds of pages of documents, the provision of key information through interrogatories, and several meet-and-confer teleconferences.

9. Additionally, on April 28, 2020, Defendant filed an Amended Answer which added two additional affirmative defenses, including that GBL § 399-zzz is an unconstitutional violation on commercial speech in violation of the First Amendment. (ECF No. 20).

10. From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution. To that end, on February 4, 2020, Plaintiff made a written settlement demand on Defendant.

11. The Parties then engaged in months of arms'-length settlement negotiations and, on July 16, 2020, reached an agreement and executed a term sheet.

12. The resulting $2,700,000 non-reversionary Proposed Settlement secures

extraordinary relief for the class. Based on Defendant's records the proposed Settlement Class includes approximately 89,310 Waste Management residential subscription customers with a New York mailing address who from September 27, 2016 to and through August 27, 2020 were charged and paid Defendant's Administrative Charge. Discovery showed that Defendant had collected approximately $3,226,903.61 in said fees.

13. Pursuant to the terms of the Proposed Settlement, every Settlement Class Member with an Active Waste Management Account ("WMA") will automatically receive a *pro rata* payment as a percentage of the total amount of Administrative Charges he or she paid via the WMA, unless he or she excludes him or herself from the Settlement. Payments to those Settlement Class Members with Active WMAs will occur through a credit to the WMA. Active WMAs account for approximately 75% of the total fees collected.

14. Settlement Class Members with a Closed WMAs will have until the Claims Deadline to submit a claim for a *pro rata* payment as a percentage of the total amount of Administrative Charges he or she paid via the WMA. Payments to those Settlement Class Members with a Closed WMA will be made by check. Closed WMAs account for approximately 25% of the total fees collected.

15. Moreover, as part of the Proposed Settlement, Defendant has agreed not to reinstate the Administrative Charge unless GBL § 399-zzz is amended, repealed, ruled unconstitutional, or otherwise invalidated. This relief is meaningful. At the time of settlement, there were approximately 62,357 active Waste Management residential customers in New York. The vast majority of these customers were billed on a quarterly basis (although some were billed monthly or bi-monthly), and therefore incurred the $6.50 Administrative Charge quarterly. Thus, assuming quarterly billing, these active Waste Management customers will save a total of

$1,621,282 in Administrative Charges per year.

***Factors Supporting Final Approval***

16. The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arms'-length.

17. Plaintiff and Class Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class' ability to secure an award of damages under GBL § 399-zzz and GBL § 349(h), the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain. Thus, the Settlement secures a more proximate and more certain monetary benefit to the Class than continued litigation.

18. Plaintiff and Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever. This is especially true given that at the time of settlement, no court had ever issued an opinion interpreting GBL § 399-zzz. Since that time, Judge Seibel of the Southern District of New York issued an opinion dismissing a GBL § 399-zzz case on statutory interpretation grounds, which may have been at issue in this case. *See Santoro v. State Farm Mutual Automobile Ins. Co.*, 2020 WL 6586630 (S.D.N.Y. Nov. 9, 2020). As of the date of this declaration, there are three other fully briefed motions to dismiss concerning statutory interpretation of GBL § 399-zzz pending before New York federal courts. *See Herzog v. Farmers Group, Inc., et al.*, Case No. 7:19-cv-09097-PMH (S.D.N.Y.); *Rosenberg v. Triborough Bridge and Tunnel Authority d/b/a MTA Bridges and Tunnels*, Case No. 1:19-cv-10478-ALC (S.D.N.Y.); *Manship v. TD Bank, N.A.*, Case No. 1:20-cv-00329-GTS-DJS

(N.D.N.Y.).

19.     This is also true in light of the potential applicability of the First Amendment under *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1150-52 (2017) (concluding that GBL § 518 regulated speech and remanding to the Second Circuit to consider whether the statute was in violation of the First Amendment).  That issue is also pending in the *Manship* case.

20.     Defendant is also represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case, including by moving for summary judgment.  Plaintiff and Class Counsel are also aware that Defendant would continue to challenge liability under GBL § 399-zzz, as well as assert a number of defenses.  Defendant has indicated that it would continue to assert numerous defenses on the merits, including that Defendant is offering a "credit or other incentive," which is permitted under the statute, and that the statute violates the First Amendment.  *See, e.g.*, *Santoro*, 2020 WL 6586630, at *3-5 (discussing "credit or other incentive" exemption in the statute).  Defendant would have also vigorously contested the certification of a litigation class.  Looking beyond trial, Plaintiff is aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would attempt to argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

21.     Plaintiff and Class Counsel believe that the relief (both monetary and prospective) provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

22.     On August 27, 2020, the Court granted Plaintiff's Motion For Preliminary Approval.  (ECF No. 27).

23.     Since the Court granted preliminary approval, Plaintiff has worked with the

5

Settlement Administrator, Heffler Claims Group ("Heffler"), to carry out the Court-ordered notice plan. As detailed in the accompanying Declaration of Settlement Administrator, the Court-ordered notice plan has been carried out in its entirety, and direct notice was delivered by postcard to 99.25% of the Settlement Class.

24. Pursuant to the Preliminary Approval Order (ECF No. 27), the deadline to object to or opt-out of the Settlement was November 6, 2020. *Id.* ¶¶ 17, 22. As detailed in the Settlement Administrator Declaration, there were <u>zero</u> objections and only one request for exclusion.

25. Attached hereto as **Exhibit B** is a current firm resume for Bursor & Fisher, P.A.

26. My firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. *See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached hereto as **Exhibit B**. Bursor & Fisher was appointed Class Counsel in *Russett, et al. v. The Northwestern Mutual Life Insurance Company*, Case No. 7:19-cv-07414 (S.D.N.Y.), where we secured a $595,000 class-wide settlement, which was finally approved by Judge Kenneth Karas on October 6, 2020. ECF No. 51; *see also* 10/6/20 Final Approval Hearing Transcript, a true and correct copy of which is attached hereto as **Exhibit C**. Bursor & Fisher has also brought several other cases on behalf of putative class members for violations of GBL § 399-zzz. *See*, *e.g.*, *Santoro v. State Farm Mutual Automobile Insurance Company*, Case No. 7:19-cv-09782-CS (S.D.N.Y.); *Herzog v. Farmers Group, Inc., et al.*, Case No. 7:19-cv-09097-PMH (S.D.N.Y.); *Rosenberg v. Triborough Bridge and Tunnel Authority d/b/a MTA Bridges and Tunnels*, Case No. 1:19-cv-10478-ALC (S.D.N.Y.).

27. My firm has also been recognized by courts across the country for its expertise.

*See* Ex. B; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Welspun Litigation*, Case No. 16-cv-06792-RJS (S.D.N.Y. January 26, 2017) (appointing Bursor & Fisher interim lead counsel to represent a proposed nationwide class of purchasers of mislabeled Welspun Egyptian cotton bedding products).

28. Based on Class Counsel's experience litigating similar consumer class actions, including those alleging GBL § 399-zzz violations as described above, Class Counsel is of the opinion that the Settlement is fair, reasonable, and adequate.

29. As discussed above and throughout Plaintiff's Motion for Final Approval of Class Action Settlement, the Settlement reached in this case was the product of negotiations conducted at arms'-length by experienced counsel representing adversarial parties, and there is absolutely no evidence of fraud or collusion.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 21st day of December 2020 at Yorktown Heights, New York.

                                              */s Philip L. Fraietta*
                                              Philip L. Fraietta